# IN THE COURT OF APPEALS OF IOWA

No. 25-2196
Filed March 11, 2026

**In the Interest of V.S., Minor Child,**

**V.P., Mother,**
Appellant.

Appeal from the Iowa District Court for Polk County,
The Honorable Erik I. Howe, Judge.

**AFFIRMED**

Michael A. Horn of Horn Law Offices, Des Moines,
attorney for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes,
Assistant Attorney General, attorneys for appellee State.

Jami J. Hagemeier of Youth Law Center, Des Moines,
attorney and guardian ad litem for minor child.

Considered without oral argument
by Tabor, C.J., and Badding and Langholz, JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

A mother, Vanessa, appeals the order terminating her parental rights to V.S., her three-year-old daughter. She argues that termination is not in the child's best interests, that the closeness of their bond should preclude termination, and that a guardianship would be preferable. After an independent assessment of the record, we affirm the termination order.[1]

## I.     Facts and Prior Proceedings

Vanessa has six children. V.S., born in 2022, is the youngest. V.S. has a different father than her five siblings. The family came to the attention of the Iowa Department of Health and Human Services in January 2024 when the police were called to Vanessa's home on a report of domestic violence.[2] Vanessa was intoxicated and assaulted V.S.'s father, Steven, and her oldest daughter, K.P.[3] The juvenile court approved the removal of all six children. The department placed the five oldest children with their father, Daniel, and V.S. with her maternal aunt.

In March, the court adjudicated V.S. and her siblings as CINA. Three months later, Steven was hospitalized and died. The department reported that Vanessa had been with him at the hospital despite a protective order

---

[1] "We review termination of parental rights de novo. We are not bound by the factual findings of the juvenile court, though we give them respectful consideration, particularly with respect to credibility determinations." *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021) (internal citation omitted).

[2] An earlier children-in-need-of-assistance (CINA) case for the six children closed in Warren County in 2023.

[3] Vanessa entered an *Alford* plea to domestic abuse assault causing bodily injury and assault causing bodily injury. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (permitting a criminal defendant to enter a guilty plea without admitting guilt).

prohibiting their contact. In assessing Vanessa's fitness to resume custody of the children, the department noted her "history of being in domestically violent relationships" with both Daniel and Steven. The department was also concerned about Vanessa's "years of alcohol abuse" and her struggles with anxiety and depression.[4] Finally, the department reported that her visitation was inconsistent.

In January 2025, the juvenile court issued a permanency order, noting the mother's unresolved substance-use, domestic violence, and mental-health issues. The court set a termination hearing for April 2025.[5]

By the April hearing, Vanessa had made some improvement. She tested negative for all substances and testified to being sober since September 2024. The court credited her explanation that she did not use marijuana for "recreational purposes" but instead to treat panic attacks. And although she was unemployed, she'd been going to therapy. As to her participation in services, the juvenile court found, "[o]n balance, . . . though the trend upward was slight, there has been a general trend upward in her engagement." Because of this improvement, the juvenile court denied termination and deferred permanency with the goal of reunification.

But at the review hearing in August 2025, the juvenile court did not see the continued improvement it had hoped for. The court held a termination hearing in November. Together, the August and November hearings illuminated those same looming problems: alcohol consumption and

---

[4] Vanessa carried a medical marijuana card, but the department could not obtain a release to verify her purchases were legal. She told the court in November 2024 that she used marijuana for her anxiety but was trying to "wean herself off" the drug.

[5] Also in April, the court issued a bridge order, granting Daniel sole legal custody of the five older children.

domestic violence. As to her drinking, Vanessa claimed she had been sober for 197 days. But the department case manager received reports that Vanessa was "continuously going to the bars with her boyfriend and drinking." As for violent relationships, Vanessa reported being assaulted by her new boyfriend, Jacob, in June. The State obtained a no-contact order prohibiting interactions between Jacob and Vanessa. Vanessa later tried to dismiss the order. And although Vanessa denied maintaining a relationship with Jacob, the service provider testified she saw Vanessa's vehicle parked outside his house.[6]

Beyond those concerns over substance use and domestic violence, Vanessa's participation in services was not stellar. She attended only fifteen of the twenty-nine visits offered with V.S. between April and October 2025. Vanessa blamed the department for the inconsistencies rather than take accountability for her actions.

The juvenile court terminated Vanessa's rights to her daughter under Iowa Code section 232.116(1)(h) (2025). Vanessa appeals.

## II.    Analysis

We review termination cases in three steps. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). First, the State must prove a statutory ground for termination under Iowa Code section 232.116(1). *Id.* Second, the State must show termination is in the child's best interests under section 232.116(2). *Id.* Third, parents may rely on exceptions to termination under section 232.116(3). *Id.* We address only those steps that a parent disputes. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

---

[6] The juvenile court believed the service provider and did not find Vanessa's denials to be credible.

## A. Best Interests

Vanessa first contends termination is not in V.S.'s best interests. In determining best interests, we give primary consideration to the child's safety, to the best placement for furthering her long-term nurturing and growth, and to her physical, mental, and emotional condition and needs. Iowa Code § 232.116(2).

Vanessa points out, "[p]ast performance is not an absolute predictor of the future; it only *may* be indicative of what the future holds." *In re J.T.*, No. 15-1338, 2015 WL 5969450, at *4 (Iowa Ct. App. Oct. 14, 2015). She emphasizes that she'd completed substance-use treatment, provided negative drug screens, engaged in therapy, had stable housing, and was employed with sufficient income. Lastly, she reminds us that terminating her parental rights to V.S. severs the relationship V.S. has with her five siblings.

While not diminishing those measures of stability, we still find termination of Vanessa's parental rights promotes V.S.'s best interests. True, past performance cannot perfectly forecast future parenting fitness. But here the juvenile court delayed permanency for V.S. because Vanessa started to make progress. Yet Vanessa cycled back to troubling behaviors. She continued to spend time in bars and pursue a romantic relationship with an unsafe paramour.[7] Her testimony shows she has not taken accountability for these decisions and even sought to drop the no-contact order against her paramour. Vanessa denies frequenting bars or carrying on a romantic relationship, but the district court did not find her credible. Meanwhile, V.S.

---

[7] Vanessa completed a course of outpatient substance-use treatment and was successfully discharged in 2024. We commend her for this work, but her recent outings to bars do not convince us she has stopped drinking.

is bonded to her aunt and doing well in that placement, where she's been for nearly two years.

Lastly, we consider V.S.'s contact with her siblings. We recognize that our statutes and case law emphasize the importance of sibling relationships. *See In re I.P.*, No. 19-0715, 2019 WL 3317922, at *4 (Iowa Ct. App. July 24, 2019); *see also* Iowa Code § 232.108. But preserving Vanessa's parental rights does not ensure close contact among all her children. The record shows V.S. and her siblings see each other only occasionally now. Daniel testified that Vanessa spent little time visiting the older children. For these reasons, we find termination is in V.S.'s best interests.

## B. Exceptions to Termination

Next, Vanessa contends that a factor in Iowa Code section 232.116(3) applies to preclude termination. Vanessa highlights the fact that V.S. calls her "golden mommy." And according to Vanessa, termination would be harmful to V.S. because of the bond they share. *See* Iowa Code § 232.116(3)(c); *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (placing burden on parent to prove by clear and convincing evidence that "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship" (citation omitted)).

The State contests this point, arguing Vanessa did not preserve error. Assuming without deciding error was preserved, we find this exception does not preclude termination.

Exceptions to termination "are permissive, not mandatory." *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). Contrary to Vanessa's contention, the record does not show a strong bond between her and V.S. In fact, V.S. once

asked if Vanessa was her sister. Vanessa did not carry her burden to show this permissive exception applied to avoid termination of parental rights.

### C. Guardianship

Lastly, Vanessa asks us to preserve her parental rights and place V.S. in a guardianship with the child's aunt. But "a guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). And what's more, a guardianship "can only be ordered if the court first finds that convincing evidence exists showing termination of the parent-child relationship is not in the child's best interests . . . ." *Id.* at 32–33. Here, we've already found termination is in V.S.'s best interests.

A guardianship is appropriate in some circumstances, such as when the parent and guardian "have a close, mature, and healthy relationship that is free of conflict." *W.M.*, 957 N.W.2d at 315 (quoting *B.T.*, 894 N.W.2d at 32). But here, there is no evidence of such a relationship. In fact, at trial Vanessa admitted her relationship with her sister was "strained."

V.S. needs stability, and she has found it with her aunt. To avoid creating more uncertainty for V.S., we decline Vanessa's request for a guardianship and instead affirm the juvenile court's termination of Vanessa's parental rights.

**AFFIRMED.**